# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:25-CR-188 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE PAMELA A. BARKER |
| vs. | : | |
| | : | |
| BRIONNA BLAIR, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR BRIONNA BLAIR** |
| Defendant. | : | |

Defendant Brionna Blair, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Ms. Blair's sentence.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
Telephone: (216) 522-4856
Facsimile: (216) 522-4321
jeffrey_lazarus@fd.org

Attorney for Brionna Blair

1

**MEMORANDUM**

I.      Introduction

> Every time you look at me
> I'm as helpless as can be
> I become a puppet on a string
> You can do 'most anything to me
> All you do is touch my hand
> And your wish is my command
> I become a puppet on a string
> You can do 'most anything to me

      - "Puppet On A String," by Elvis Presley, 1965.

Defendant Brionna Blair now appears for sentencing after having pled guilty to making a false statement during the purchase of a firearm. In accordance with the parties' plea agreement and the presentence report, her sentencing guidelines range is 10 to 16 months, within Zone C, at total offense level 12, Criminal History Category I. Ms. Blair has spent her entire life being a law-abiding citizen but in 2023, she began a romantic relationship with Edward Bunch. During their relationship, Bunch became violent and controlling, having both a physical and psychological hold on Ms. Blair. Bunch and his sister both convinced Ms. Blair to purchase a firearm with the intention of giving it to Bunch since he could not lawfully purchase one. Bunch's sister drove Ms. Blair to a gun store where she bought the firearm, thereby making a false statement. Later that day, Bunch beat and choked Ms. Blair, which led to her breaking up with Bunch and leaving the apartment where they were living. Bunch took control of the firearm and later used it to commit aggravated murder. In the subsequent investigation, Ms. Blair admitted her offense to law enforcement as well as Bunch's involvement, and Bunch has since been sentenced to imprisonment for 25 years to life.

She is very sorry for her offense and has great remorse for her actions. Ms. Blair asks this Court vary downward and impose a non-custodial sentence for this offense. This request is based

on Ms. Blair's personal history and circumstances, the facts surrounding the offense, the fact that she has no prior arrests or convictions, the attached letters of support, and her compliance while on pretrial release. A non-custodial sentence is warranted and justified and is sufficient to achieve the statutory sentencing factors under 18 U.S.C. § 3553(a).

**II.     Procedural history and sentencing guideline range**

Ms. Blair's false statement and firearm purchase occurred in July of 2023. She met with law enforcement in September of 2023 and March of 2024 to admit her conduct and detail Bunch's role in the offense. Edward Bunch was indicted for aggravated murder in the Cuyahoga County Court of Common Pleas and on October 2, 2024, he was sentenced to 25 years to life. *State of Ohio v. Bunch*, Cuyahoga County Case Number 23-CR-684523. On April 16, 2025, an indictment was returned charging Ms. Blair with making a false statement in acquiring a firearm, under 18 U.S.C. § 922(a)(6). Dkt. 1. At her initial appearance on May 8, 2025, she was released on bond with conditions. Dkt. 54; Dkt. 5.

On September 24, 2025, Ms. Blair pled guilty before this Court under the terms of a plea agreement. Dkt. 13. In addition to pleading guilty, the parties agreed upon a factual basis and calculation of the Sentencing Guidelines. Specifically, the parties agree the base offense level is 14, and that Ms. Blair receives a two-level enhancement because she transferred the firearm to a prohibited person, resulting in an offense level of 16. Dkt. 13, Plea Agreement, PageID 70. The defense contends that Ms. Blair should receive an additional two-level reduction under U.S.S.G. § 2K2.1(b)(10)(C)(i), because her offense was motivated by her relationship with Bunch. Dkt. 13, Plea Agreement, PageID 70-71. The presentence report supports the application of this reduction. PSR at ¶ 22. Therefore, Ms. Blair's offense level is reduced to 14. She then receives a two-level reduction for her acceptance of responsibility, resulting in a total offense level of 12.

3

As Ms. Blair has no prior criminal history, her Criminal History Category is I. The resulting guidelines range is 10 to 16 months, within Zone C. The defense has no objections to the presentence report.

### III. The personal history of Brionna Blair

Ms. Blair is a 31-year-old woman who has lived in the Cleveland area her entire life. She was raised solely by her mother and her father was incarcerated for most of Ms. Blair's childhood. Her mother struggled financially and relied on government assistance for basic needs like housing and food. Her mother also had a substance abuse issue, mostly with alcohol; while growing up, her mother's various boyfriends had alcohol problems as well. There was also lots of domestic violence between Ms. Blair's mother and her boyfriends.

There was a period of time when Ms. Blair's father was not in jail, specifically when Ms. Blair was seven to nine years old. During those times, Ms. Blair would spend summers at her grandmother's house where her father was also staying. While staying there, Ms. Blair's father repeatedly committed acts of sexual abuse to Ms. Blair. PSR at ¶ 44. Her father was later prosecuted and sentenced for raping Ms. Blair's sister. Ms. Blair did not report the sexual abuse by her father to anyone until after her sister was raped. Nonetheless, Ms. Blair became very angry with her mother for not doing more to protect her or her sister. This caused a major rift between Ms. Blair and her mother, and their relationship has never been the same. In fact, a few years ago, Ms. Blair's mother suddenly moved to Atlanta and they have not seen each other since her mother moved.

Between her mother's drinking and the issues with her father, Ms. Blair was forced to fend for herself at an early age. She attended Shaw High School in East Cleveland. At fifteen, she became pregnant; she and her boyfriend intended on remaining together to raise the child.

However, shortly after Ms. Blair's son was born, her son's father became violent towards her, committing frequent acts of domestic violence, which led to Ms. Blair ending the relationship. PSR at ¶ 46. Ms. Blair raised her son on her own and continued with school, graduating from high school in 2012. PSR at ¶ 56. To get by financially, she relied heavily on her older sisters. However, being a teenager and raising a child by herself was very stressful; she was very angry about the circumstances she faced and she struggled with mental health issues. PSR at ¶ 53.

After graduating high school, she got a job at Taco Bell where she has continued to work at Taco Bell for the last eleven years. PSR at ¶ 57. She has worked at several stores but has been promoted to shift manager and thrives in this position. She continued to work hard and raise her son but has struggled financially. While her son's father has not been consistently involved in his son's life, he has periodically sought to reconnect with Ms. Blair, which usually ended up him getting angry with Ms. Blair and threatening her. About five years ago, her son's father reentered her life, trying to make amends for his past wrongs and trying to be a father to his son. Ms. Blair briefly restarted a relationship with him, which led to her getting pregnant with her daughter. Once again, this led to her children's father becoming violent and threatening to her, for which she ended the relationship. PSR at ¶ 46. Ms. Blair had her daughter, raising her on her own as well.

Her children are now ages fourteen and five and are doing well. Her kids are doing well in school. As a manager at Taco Bell, Ms. Blair has great control over her schedule and can set her work hours around her obligations to her children. Ms. Blair has also recently enrolled at Cuyahoga Community College and is taking classes so she can earn her degree as a medical assistant. PSR at ¶ 56.

Shortly before the indictment was returned in this case, Ms. Blair was suffering from significant stomach pains and unexplained bleeding. After several medical tests, it was determined that she had cancerous cells in her uterus. PSR at ¶ 51. She has had two surgeries to remove the cancerous cells, which has successfully removed the cells and does not require further cancer treatment, but requires a number of follow-up appointments to ensure the cancerous cells have not returned.

IV. The offense conduct

In 2022, Ms. Blair met Edward Bunch. Bunch was the brother of Ms. Blair's friend Antequesha. When Ms. Blair first met Bunch, however, she was still having issues with her children's father, who continued to contact her, making verbal threats both in person and over the phone. She was very much afraid of her children's father and came to believe that Bunch would protect her. Ms. Blair and Bunch began a relationship. In the summer of 2023, Ms. Blair's financial issues became overwhelming and she was evicted from her apartment due to her inability to pay rent. Bunch suggested that Ms. Blair move in with his sister, Antequesha, which she did. Having a place to live and knowing that Bunch could protect her from her kids' father gave Ms. Blair a sense of security; Bunch also gave Ms. Blair money. She knows now, however, that while Bunch kept her ex-boyfriend away, Bunch was a dangerous person as well.

Shortly after moving into Antequesha's home, Bunch became controlling and physically abusive to Ms. Blair. Ms. Blair felt helpless to break free. Not long after this abuse began, Bunch told Ms. Blair that he wanted her to buy a firearm for him. She knew that he had a criminal record and could not purchase a firearm on his own so Ms. Blair was opposed to doing this. However, Antaquesha started putting pressure on Ms. Blair to help her brother, and Ms. Blair felt she couldn't refuse for fear of being kicked out of Antaquesha's apartment. So, in mid-July,

6

Antaquesha drove Ms. Blair to the gun store, and Bunch gave her the money, directing her which firearm to buy. Ms. Blair purchased the firearm for Bunch, thereby making a false statement in the acquisition of a firearm and constituting the offense. Later that day, Bunch became physically abusive towards Ms. Blair, which included Bunch choking Ms. Blair. She decided to leave the home with her children, and the living option was at Ms. Blair's father's home.

Bunch used the firearm to commit a homicide roughly a week later, for which he was apprehended and charged. Ms. Blair met with Cleveland Police detectives on September 6, 2023, to tell them about purchasing the firearm for Bunch. PSR at ¶ 11. Months later, she met with ATF agents to provide additional information about the illegal purchase of the firearm. PSR at ¶ 12. Bunch pled guilty to aggravated murder and been sentenced to 25 years to life in state prison. PSR at ¶ 8.

### V. The § 3553(a) factors warrant a non-custodial sentence

The presentence report identifies grounds for this Court to vary downward from the guidelines range based on her personal history and lack of criminal record. PSR at ¶ 87. The defense appreciates the presentence report writer's detailing of these grounds and offers additional grounds for this Court's consideration. Ms. Blair asks this Court to impose a non-custodial sentence so Ms. Blair can continue her beneficial progress in the community for the following reasons.

**A. This offense constitutes aberrant conduct by Ms. Blair, which was motivated by her fears of Edward Bunch and his acts of domestic violence**

It cannot be denied that Ms. Blair would not have committed this offense if she never met Edward Bunch. Prior to beginning her relationship with Bunch, Ms. Blair had been a law-abiding citizen with no prior criminal history and no prior arrests or convictions whatsoever. Her relationship with Bunch changed that and led to her making regrettable choices during the

7

relationship. Both Bunch and his sister pressured Ms. Blair to purchase this firearm, and Bunch had been physically abusive to her as well. During this time, Ms. Blair felt powerless to do anything about the situation she was in. So, when Bunch and his sister told her to purchase a firearm, she knew it was wrong, but feared the repercussions of saying no. He directed her which firearm to get, he gave her the money to pay for it, and he took it from her afterwards.

This case unfortunately presents a theme in Ms. Blair's life history. She has a long history of being abused by, and taken advantage of, by men. It first began with the sexual abuse by her father when she was a young girl. Then, her child's father became physically and emotionally abusive to her. This abuse from her child's father occurred when she was fifteen but continued when he would periodically seek to return to her life, including five years ago when they had a second child. Edward Bunch was abusive to her during their relationship. Ms. Blair is a meek and timid individual who has been repeatedly victimized by the men in her life. These circumstances demonstrate her susceptibility to being taken advantage of by Edward Bunch and how committing this crime is aberrant conduct. Such circumstances warrant a sentence below the guidelines.

Other federal courts have granted downward variances in similar circumstances. *See United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18 to 24 months, sentence of probation was affirmed, as defendant's fraud cover-up, which lasted two years was an "isolated mistake . . . in the context of [the defendant's] entire life."); *United States v. Leyva-Franco*, 2006 WL 64422 (9th Cir. 2006) (defendant's sentence for drug smuggling was granted four-level downward departure for aberrant behavior, in light of evidence that conduct was single criminal occurrence that was committed without significant planning, was of limited duration, and represented marked

deviation by defendant from otherwise law-abiding life.); *United States v. Martinez-Villegas*, 993 F.Supp. 766 (C.D. Cal. 1998) (in drug case downward departure of one level granted because of aberrant conduct where government offered much money to defendant with no criminal record to perform single act of transporting drugs); *United States v. Delvalle*, 967 F.Supp. 781 (E.D. N.Y. 1997) (defendant's involvement in drug conspiracy on two different days, separated by a week, were so loosely related they could be seen as single act of aberrant conduct warranting twelve-level departure).

In total, Ms. Blair would not have illegally purchased a firearm if it were not for her relationship with Bunch. She made her choices and committed this offense, but she would not have done it if Bunch did not pressure her to do so. She has great remorse for her actions and asks this Court to consider her offense to not be indicative of the person she truly is. Ms. Blair is a caring and devoted mother who has always been on the right side of the law and this offense constitutes aberrant conduct, which warrants a non-custodial sentence.

### B. True First Offender

The instant offense is Ms. Blair's first conviction for any federal, state, or local law. As detailed above, this is not who she is. She is truly a first offender and not a danger to the public. As a true "first offender" Ms. Blair's designation as Criminal History Category I does not truly embody her lack of criminal history. It is possible for other offenders to have prior convictions but still qualify as Criminal History Category I for sentencing guideline purposes. The Sentencing Commission, in 2023, enacted amendments, recognizing the value of a defendant who has zero criminal history, and permitted a two-level reduction for certain defendants with no criminal history points. *See* U.S.S.G. § 4C1.1. Ms. Blair's offense is categorically disqualified from receiving the guidelines reduction because a firearm was involved.

While she does not qualify for the reduction under § 4C1.1 the fact remains that she is still a true first offender, and this Court can take that into consideration in fashioning her sentence, just as other sentencing courts have done. *See e.g., United States v. Paul*, 561 F.3d 970 (9th Cir. 2009) (where defendant convicted of embezzlement and guideline range was 10-16 months, court's within-guideline sentence of 15 months was unreasonably high in part because defendant was a first-time offender with no criminal record ); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (where defendant's guidelines were 41–51 months, court's sua sponte variance to probation was not unreasonable in part because crime was defendant's first conviction and Criminal History Level I "did not fully account for his complete lack of criminal history"); *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) (defendant convicted of possession of child porn and guideline range of 78-97 months, court varied to 24 months because this was defendant's first conviction and rejected the government's argument that guidelines already considered this by placing defendant in Criminal History Category I); *United States v. White*, 506 F.3d 635 (8th Cir. 2007) (in case of distribution of child porn case where guidelines were 108-135, variance to 72 months imposed because conviction was defendant's first offense, rejecting government's argument that court may not consider defendant's lack of prior record because already taken into account by guidelines; after *Booker*, court can consider lack of criminal record apart from the guidelines); *United States v. Cabrera*, 567 F.Supp.2d 271 (D.Mass. 2008) (where defendant convicted of drug crime and guideline range was 70-78 months, court imposed sentence of 24 months in part because "concerns about recidivism . . . compel a sentence still substantially lower. [Data from the Sentencing Commission] suggests that individuals – like Cabrera – with zero criminal history points are less likely to recidivate than all other offenders . . . even for offenders with only one criminal history point").

As Ms. Blair has no prior convictions of any kind, she asks this Court to consider her status as a first offender in fashioning her sentence.

### C. Letters of Support

Attached as Exhibit A are three letters of support for this Court's consideration. The first letter is written by Tori Griffith, who is Ms. Blair's boss at Taco Bell. He details what an outstanding and responsible worker Ms. Blair has been on the job. Ex. A, p. 1. He also discusses Ms. Blair skills as a mother and important her children are to her. The next letter is written by Antwan, one of Ms. Blair's coworkers at Taco Bell. He has only positive things to say about her skills as a worker and a mother. Ex. A, p. 2. The final letter is written by Shakira Mack, who has been a friend of Ms. Blair since middle school. Ms. Mack details the struggles that Ms. Blair went through as a child, and the traumas she suffered. Despite those issues, and despite her having a child at fifteen, Ms. Mack makes clear how committed Ms. Blair is to her children and her work. She explains how responsible and committed Ms. Blair is. Ex. A, p. 3. She details how out of character this offense is for Ms. Blair, and while she recognizes that Ms. Blair was wrong, she also sees how Ms. Blair has shown remorse for her actions and has tried to make amends. Collectively, these letters all demonstrate that Ms. Blair is a kind and caring person, a good mother and a hard worker. They further detail that she is not a danger to the community and a person who is extremely unlikely to commit additional crimes. These letters support the imposition of a non-custodial sentence.

### D. Compliance on pretrial release

Brionna Blair has been on bond in this case since it began in May. For eight months now she has abided by the Court's conditions of bond without any violations. *See* PSR at ¶ 4. The Sixth Circuit and other federal courts have held that compliance on pretrial release is a valid

consideration in determining the sentence. *See e.g.*, *United States v. Rhodes*, 410 F. Appx. 856 (6th Cir. 2010); *United States v. Munoz-Nava*, 524 F.3d 1137, 1149 (10th Cir. 2008) (affirming a significant downward variance because the district court considered, among other things, the defendant's exemplary behavior while on a year-and-a half pretrial release); *United States v. Nesbeth*, 188 F.Supp. 3d 179 (E.D.N.Y. 2016) (imposing a downward departure in an importation of cocaine case, because the defendant completed a college degree and did community service counseling children).

For eight months of pretrial release Ms. Blair has adhered to all conditions of her release. She has, however, not simply stayed out of trouble, but has sought to improve herself. Before this case began, Ms. Blair had been a daily marijuana user for years but has abstained from any marijuana use while on bond. PSR at ¶ 54. She has continued to work at her job and has started taking classes at Cuyahoga Community College to further her education. PSR at ¶ 56. Her efforts and compliance on pretrial release are not addressed by the Sentencing Guidelines and should be taken into consideration at sentencing. She has demonstrated to this Court that she can be trusted in the community and that she can follow the rules of probation. Therefore, Ms. Blair asks this Court to permit to continue her positive behavior and order a non-custodial sentence.

## VI.    Conclusion

A non-custodial sentence is proper under the statutory sentencing factors in 18 U.S.C. § 3553(a). Brionna Blair asks this Court to permit her to remain in the community on whatever conditions this Court deems appropriate so that she may continue her rehabilitative efforts. She will abide by any terms or conditions this Court puts in place.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
1660 W. 2nd Street
Skylight Office Tower, Suite 750
Cleveland, Ohio 44113
Telephone: (216) 522-4856; Fax: (216) 522-4321
E-Mail: jeffrey_lazarus@fd.org

Attorney for Brionna Blair